488 A.2d 628

**COMMONWEALTH of Pennsylvania**

v.

**Charles BRADFORD, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 17, 1984.

Filed Feb. 21, 1985.

216

Marilyn J. Gelb, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

WICKERSHAM, Judge:

Appellant Charles Bradford was arrested on April 26, 1976, and was subsequently charged with rape, unlawful restraint, and simple assault. Appellant was tried on January 18, 1977 by the Honorable Alfred J. DiBona, Jr., sitting without a jury, and convicted of all three charges. Post-verdict motions were filed and subsequently denied. On October 5, 1977, Judge DiBona sentenced appellant to five (5) to ten (10) years imprisonment for rape, and to two (2) years concurrent probation for unlawful restraint and simple assault.

Appellant filed a *pro se* notice of appeal to this court requesting that counsel be appointed to represent him. The Public Defender's Association was appointed to perfect appellant's appeal, but upon request to the court, the Association was permitted to withdraw its appearance. Two more attorneys were appointed to represent appellant on appeal; however, neither attorney filed a brief on appellant's behalf. On March 27, 1979, this court dismissed appellant's appeal for failure to proceed.

On October 31, 1979, appellant petitioned for collateral relief under the Post Conviction Hearing Act.[1] An evidentiary hearing was held before the Honorable Edward J. Blake on December 17, 1982. On September 15, 1983, Judge Blake vacated appellant's conviction and sentence on the unlawful restraint charge and permitted appellant to petition this court for leave to appeal *nunc pro tunc* from the judgment of sentence imposed by Judge DiBona on October 5, 1977. All other claims for relief were denied. Appellant now appeals *nunc pro tunc* from the judgment of sentence of October 5, 1977, and from Judge Blake's order of September 15, 1983 partially denying the relief he sought in his P.C.H.A. petition.

Appellant presents the following issues for our consideration:

    I. Where appellant was not brought to trial timely pursuant to Rule 1100, and where trial counsel contested the Commonwealth's petition to extend, and filed a petition to dismiss, was post-verdict motions counsel ineffective for failure to argue trial counsel's assignment of error and was appellant thereby deprived of effective counsel in derogation of the Sixth and Fourteenth Amendments and the applicable provisions of the Pennsylvania Constitution?

    II. Where trial counsel announced his unpreparedness to go to trial, and failed to investigate the necessity for locating and subpoenaing an eye-witness, was appellant denied the effective assistance of counsel under the Sixth and Fourteenth Amendments and the applicable provisions of the Pennsylvania Constitution?

Brief for Appellant at v.

In his first issue, appellant avers that he was not brought to trial timely, pursuant to Pa.R.Crim.P. No. 1100. Specifically, appellant argues that the Commonwealth failed to show due diligence warranting an extension of the Rule 1100 run date.

---

1. Act of May 13, 1982, P.L. 417, No. 122, § 2; 42 Pa.C.S.A. §§ 9541–9551.

The complaint was filed against appellant on April 26, 1976; the mechanical run date, therefore, was October 25, 1976. Defense continuances resulted in a number of excludable days. Thus, appellant does not contest that the Commonwealth's Petition for Extension Under Rule 1100(c) was timely filed on November 1, 1976. Rather, appellant argues that the Commonwealth did not produce sufficient evidence at the Rule 1100 hearing held on November 23 to show due diligence justifying an extension to December 9, 1976.

Of course, the Commonwealth must exercise due diligence in its attempts to bring a defendant to trial. *Commonwealth v. Lewis*, 287 Pa.Super. 64, 429 A.2d 721 (1981). It is now axiomatic that the burden is upon the Commonwealth to prove, by a preponderance of the evidence, that it has met the requirements of Rule 1100(c). *Commonwealth v. Bolden*, 336 Pa.Super. 243, 485 A.2d 785 (1984); *Commonwealth v. Dancy*, 317 Pa.Super. 578, 464 A.2d 473 (1983); *Commonwealth v. Colon*, 317 Pa.Super. 412, 464 A.2d 388 (1983). When, despite the exercise of due diligence, the Commonwealth cannot bring a defendant to trial within the prescribed time period, a court may properly grant an extension. *Commonwealth v. Bolden, supra; Commonwealth v. Colon, supra; Commonwealth v. Sharp*, 287 Pa.Super. 314, 430 A.2d 302 (1981).

Instantly, the transcript of the Rule 1100 hearing clearly establishes that the court found that the Commonwealth requested only one continuance; all other delays were caused by court delay or defense requests. N.T., Rule 1100 Hearing, November 23, 1976, at 3. The lower court granted the Commonwealth's petition for an extension on the ground that the only continuance requested by the Commonwealth was necessitated by the illness of a detective. The only evidence of the detective's illness was a notation in the court record. Appellant points out that the Commonwealth presented no evidence or testimony regarding the detective's illness and therefore, the Commonwealth failed to prove that it acted with due diligence. Thus, appellant

argues that Rule 1100 was violated and that the charges against him should have been dismissed.

■ We disagree. In *Commonwealth v. Bulling*, 331 Pa.Super. 84, 480 A.2d 254 (1984), this court found that a court may, in effect, take judicial notice of uncontested notations in the court record in determining whether the Commonwealth has exercised due diligence in accordance with Rule 1100(c). *Accord Commonwealth v. Harris*, 315 Pa.Super. 544, 462 A.2d 725 (1983); *Commonwealth v. Bright*, 303 Pa.Super. 98, 449 A.2d 596 (1982). Instantly, the court obviously studied all of the notations in the record and thereby found that the Commonwealth had exercised due diligence. Furthermore, we find no indication of record that appellant or his counsel ever challenged the validity of the notations upon which the lower court relied. Therefore, we find, pursuant to *Bulling, Harris,* and *Bright,* that the notations in the record provided an adequate foundation for the hearing judge's decision to extend the Rule 1100 run date.

Since due diligence was established, appellant's Rule 1100 claim is meritless and post trial counsel cannot be deemed ineffective for failing to argue it at appellant's post trial motions hearing. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Courts*, 315 Pa.Super. 108, 461 A.2d 820 (1983).

In his second issue, appellant alleges that trial counsel was ineffective in that he was unprepared for trial and that he failed to call an eyewitness to testify on appellant's behalf.

Appellant's statement of the facts, while incomplete, is an adequate distillation for the purpose of discussing the issue before us.

The evidence presented by the Commonwealth can be summarized as follows:

Renee Faqua [the complainant] testified she went to [appellant] Charles Bradford's apartment at 4536 Wayne Avenue in Philadelphia at about 6 p.m. on April 26, 1976,

because a taxi driver she had met the night before had given her information about an apartment for rent. She left her purse in the hall and followed Bradford upstairs where the discussion ranged from the apartment to religion, poetry and jewelry during the next hour and a half. Bradford while conversing was painting the room, and Faqua sat on a ladder or on the radiator.

She retrieved her purse from the downstairs hall, and told Bradford $20 was missing. A discussion ensued between Faqua and Bradford as to whether a boy named Percy [Holly] who was present had taken her money. After half an hour, she was angry. She said he invited her into the next room where a struggle ensued during which time she struck him with her fist and he forced her to take off her clothes and to submit to sexual intercourse. She said she was penetrated four or five times, and that he then accused her of stealing a ring. She gave him $60 and left.

Brief for Appellant at vi (citations to Notes of Testimony omitted).

Appellant alleges that trial counsel was ineffective for failing to locate the above-mentioned Percy Holly and call him to testify on appellant's behalf at trial. In applying the standards for determining effective assistance of counsel espoused in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967) to cases where defense counsel has failed to procure witnesses, this court has repeatedly relied on *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975).

If counsel's decision not to secure [the witness'] appearance or to have the notes of [the witness'] previous testimony read to the jury was based on a reassessment of its worth and a conclusion that it was of little or no value in the posture of this case, then that decision clearly had some reasonable basis designed to effectuate [the defendant's] interests. In such circumstances, counsel's conduct would not constitute ineffectiveness.... Had counsel reached this decision on a basis designed to

advance his client's interest, this case would be analogous to those situations in which, as a matter of trial strategy, counsel decides not to call a witness at all.

. . . .

If, however, counsel's failure to seek compulsory process to obtain [the witness'] testimony or to have his prior testimony read to the jury was the result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective. In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

*Id.*, 460 Pa. at 110–111, 331 A.2d at 443.

Instantly, appellant testified at his P.C.H.A. hearing that before his trial he brought Percy Holly to the Defender Association offices where Holly was interviewed. Thus, appellant avers that the Defender's Association knew of the prospective witness' existence. Appellant further alleges that he informed the public defender representing him at trial that he wanted Holly to testify at trial. Of course, "ineffective assistance of counsel can be established through the failure to call a witness about which counsel had been informed, absent investigation or adequate explanation." *Commonwealth v. Stockard*, slip op. at 13 (J. 336/83, filed December 7, 1984). It is also true, however, that "claims of ineffectiveness cannot be abstractly reviewed in a vacuum." *Commonwealth v. Anderson*, 501 Pa. 275, 287, 461 A.2d 208, 214 (1983). *Accord Commonwealth v. Smith*, 321 Pa.Super. 170, 467 A.2d 1307 (1983); *Commonwealth v. Mayfield*, 318 Pa.Super. 450, 465 A.2d 40 (1983).

When an appellant seeks to establish that counsel was ineffective for failing to call or investigate witnesses, it is not sufficient to merely allege the existence of "potential eyewitnesses who may have helped in establishing de-

fendant's alibi defense." Rather, an appellant must also supply a factual basis indicating (1) the identity of the witnesses; (2) that counsel knew of the existence of the witnesses; (3) the material evidence that the witnesses would have provided; and (4) the manner in which the witnesses would have been helpful to his cause. *Commonwealth v. Torres,* 329 Pa.Super. 58, 68, 477 A.2d 1350, 1355 (1984).

Instantly, appellant has identified the potential witness and has alleged that counsel knew of his existence. He did not, however, call trial counsel at his P.C.H.A. hearing to verify counsel's knowledge of Holly's existence. Since appellant called neither trial counsel nor the potential witness at the P.C.H.A. hearing, the only indication as to what evidence the witness might have provided is contained in appellant's testimony at the P.C.H.A. hearing:

Q. Now, do you know what he [Percy Holly] told the Public Defender?

A. I do not know what he told the Public Defender but I know what he had told me.

Q. And what did Mr. Holly tell you?

A. He indicated to me that the Public Defender spoke with him and he actually told him exactly what he saw and that was when he brought her the juice upstairs and then he seen me coming downstairs after her and she ran out the door and I asked him, I called him and told him to stop her and he did not and she fled from the door into the street.

N.T., P.C.H.A. Hearing, at 23–24.

We fail to see how this testimony could have been helpful to appellant's cause.[2] Indeed, as the lower court found, "it

---

2. We note that appellant's testimony as to what Percy Holly would have said at trial did not go uncontradicted during the P.C.H.A. hearing. Detective Frank Coward testified that he conducted an interview with Percy Holly. He then read the content of that interview into the record of the P.C.H.A. hearing:

Q. The first question was: 'Tell me what you know about this rape. ANSWER: I kept hearing screams as she kept saying get off me, get off me. QUESTION: How many times? ANSWER: A few. QUES-

would appear that Mr. Holly would have corroborated the *victim's* testimony and would have not been of any aid to [appellant] at this trial." Lower ct. op. at 5 (emphasis added).

■■■ In a P.C.H.A. proceeding, the petitioner bears the burden of establishing counsel's ineffectiveness. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). Instantly, it is clear that appellant has not met his burden of proof. Appellant called neither his trial attorney nor the proposed witness at the P.C.H.A. hearing, and he himself presented the only testimony on his behalf at that hearing. Appellant failed to demonstrate the manner in which the witness would have been helpful to his cause. Thus, the P.C.H.A. court properly denied appellant's claim of ineffectiveness of counsel.[3]

Judgment of sentence and order of the lower court denying in part appellant's P.C.H.A. petition are affirmed.

TION: Where were you? ANSWER: I was on the steps outside the door where the bed is. QUESTION: Did you see Charles having sex with the woman? ANSWER: No. QUESTION: What else did you see? ANSWER: My boss said you'll have to give me some money because you have my ring and she hit him in the temple. QUESTION: Did you hear anything else? ANSWER: All I kept hearing was the bed going squeak squeak.'
N.T., P.C.H.A. Hearing, at 35.

3. Appellant also claimed that counsel was ineffective in failing to be prepared for trial. Other than counsel's failure to call Percy Holly, however, appellant fails to specify how counsel's alleged unpreparedness denied him a fair trial. We have already noted that "claims of ineffectiveness cannot be abstractly reviewed in a vacuum." *Commonwealth v. Anderson*, 501 Pa. 275, 287, 461 A.2d 208, 214 (1983). Thus, it is unnecessary to discuss this allegation further.